Cynthia Jo SAMUEL and Dena Meyers, Individually, and on behalf of all other persons similarly situated, Plaintiffs, Appellants,

Patricia Farley and Cynthia Lambert, Intervening Plaintiffs,

v.

UNIVERSITY OF PITTSBURGH, the Pennsylvania State University, Indiana University of Pennsylvania, Temple University, and all other state and state-related universities and colleges in the Commonwealth of Pennsylvania similarly situated, Wesley Posvar, Chancellor of the University of Pittsburgh, John W. Oswald, President of the Pennsylvania State University, William W. Hassoer, President of Indiana University of Pennsylvania, Paul R. Anderson, President of Temple University, and all other chancellors and presidents of all other state and state-related universities and colleges in the Commonwealth of Pennsylvania similarly situated, the Boards of Trustees of the University of Pittsburgh, the Pennsylvania State University, Indiana University of Pennsylvania, Temple University, and the Boards of Trustees of all other state and state-related universities and colleges in the Commonwealth of Pennsylvania similarly situated, William H. Rea, Chairman of the Board of Trustees of the University of Pittsburgh and all other persons on the Board of Trustees of the University of Pittsburgh, Albert Shoemaker, Chairman of the Board of Trustees of the Pennsylvania State University and all other persons on the Board of Trustees of the Pennsylvania State University, and all other persons on the Board of Trustees of the Pennsylvania State University, Joseph W. Serene, Chairman of the Board of Trustees of Indiana University of Pennsylvania and all other persons on the Board of Trustees of Indiana University of Pennsylvania, William R. Spofford, Chairman of the Board of Trustees of Temple University and all other persons on the Board of Trustees of Temple University and all other Chairmen and all other persons on the Boards of Trustees of all other state and state-related universities and colleges in the Commonwealth of Pennsylvania similarly situated, R. V. Allshouse, Registrar of the University of Pittsburgh, and all other registrars or persons holding similar positions in all other state and state-related universities and colleges in the Commonwealth of Pennsylvania similarly situated, Frederick Sehring, Assistant Registrar of the University of Pittsburgh, and all other assistant registrars or persons holding similar positions in all other state and state-related universities and colleges in the Commonwealth of Pennsylvania similarly situated, Milton J. Shapp, Governor of the Commonwealth of Pennsylvania, J. Shane Creamer, Attorney General of the Commonwealth of Pennsylvania, Robert P. Casey, Auditor General of the Commonwealth of Pennsylvania, and each and every named Defendant and each and every Defendant subject to jurisdiction by representation, Individually and in their official capacity.

No. 74–1624.

United States Court of Appeals, Third Circuit.

Argued Nov. 12, 1974.

Decided Dec. 26, 1974.

Michael P. Malakoff, Berger & Kapetan, Pittsburgh, Pa., for appellants.

James M. Arensberg, Tucker, Arensberg & Ferguson, Pittsburgh, Pa., for University of Pittsburgh, Wesley W. Posvar, R. V. Allshouse and Frederick Sehring, appellees.

Peter Platten and Richard Z. Freemann, Jr., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Temple University, appellee.

Delbert J. McQuaide and John C. Gilliland II, McQuaide, Blasko & Brown, State College, Pa., for The Pennsylvania State University, appellee.

Israel Packel and Thomas F. Halloran, Pittsburgh, Pa., for the Governor and the Atty. Gen. of the Commonwealth of Pennsylvania, appellees.

Robert P. Meehan and Frank P. Lawley, Jr., Harrisburg, Pa., for Auditor Gen. Robert P. Casey, appellee.

Before VAN DUSEN, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

██ This is an appeal by the plaintiffs, two married, female graduate students at the University of Pittsburgh,[1]

---

1. In the original complaint, Cynthia Jo Samuel and Dena Meyers were the only named plaintiffs. On May 14, 1974, the district court signed an order allowing two members of the

who also represent all married female students who since 1967 have attended any of the three defendant universities and who were classified as out-of-state students for tuition purposes on the basis of Rule B(2) of the Auditor General of Pennsylvania. See Samuel v. University of Pittsburgh, 56 F.R.D. 435 (W.D.Pa. 1972) (certification of plaintiff class). Plaintiffs appeal from an order entered by the District Court for the Western District of Pennsylvania, on June 7, 1974. The order directed the defendant universities to bear the expense of identifying members of plaintiff class and notifying them that, although the defendants had been found liable to the plaintiffs as a class, their damage claims would not be adjudicated on a class-wide basis. For the reasons discussed herein, we find that the appeal must be dismissed for want of a final, appealable order.[2] See 28 U.S.C. § 1291.

The plaintiffs brought this action on December 28, 1971, to challenge the constitutionality of the Auditor General's Rule B(2), which classified[3] women students as resident or nonresident for tuition purposes. It provided:

"The domicile of a wife (adult or minor) is that of her husband. Where, however, an unmarried woman enrolled as a student having a Pennsylvania resident status marries a non-Pennsylvania resident, she shall continue to be classified as a Pennsylvania resident within the meaning of these Rules." Samuel v. University of

---

plaintiff class (Patricia Farley and Cynthia Lambert) to intervene. It appears from their motion to intervene filed May 2, 1974, that they are represented by the same attorney who represents Samuel and Meyers. Since the notice of appeal, filed in the district court on June 13, 1974, specifies only the "plaintiffs" as appellants, it may be assumed that the attorney did not mean to be lodging an appeal in behalf of the intervening plaintiffs as well. In this case, the ambiguity in the notice of appeal is harmless, since we decide that the order appealed from is not final within the meaning of 28 U.S.C. § 1291. However, attorneys in multi-party cases should designate with specificity which parties are appealing and which are not. See F.R.App.P. 3(c); F.R.App.P. Form 1. Also, Indiana University and "other state and state-related universities and colleges" were dismissed as defendants in 1972. See 56 F.R.D. 435.

2. Motions to dismiss this appeal by Temple University and the University of Pittsburgh were filed on June 26, 1974, and by Pennsylvania State University on June 27, 1974. On June 26, 1974, the defendant state officials, Milton J. Shapp, Governor of the Commonwealth of Pennsylvania, Israel Packel, Attorney General of the Commonwealth of Pennsylvania, and Robert P. Casey, Auditor General of the Commonwealth of Pennsylvania, filed a brief opposing plaintiffs' motion for a stay pending appeal. However, on August 15, 1974, this court received a letter from the Governor and Attorney General, informing it that they would take no position on the decertification issue. The Auditor General did file a brief and argue in support of the district court's decertification order.

3. Rule B(2) is no longer used to determine the residency of students who are married women. The district court described its history as follows:

"Rule B(2) was in effect from June 7, 1967, until February 11, 1972, when the Attorney General of Pennsylvania withdrew his approval of the legality of the rule. For five months, until July 14, 1972, no official rule existed to guide the defendant universities in their classification of married women students. On that date, the Attorney General wrote each defendant university that a 'married woman's residency should be determined in accordance with Rule B-3', which provided that a married woman's residency was *prima facie* the same as her husband's and that the presentation of convincing evidence could establish that a married woman was a Pennsylvania resident in spite of the fact that her husband was not. On April 6, 1973, Rule A(3) of the Pennsylvania Auditor General was promulgated to replace Rule B-3. Rule A(3) provides: 'A married woman is presumed to have the domicile of her husband; however, such presumption may be rebutted by convincing evidence to the contrary.' In addition, Rule A(3) sets out nine factors which will be considered to rebut the presumption that a married woman has the domicile of her husband. Rule A(3) is applied by the same administrative processes employed by the defendant universities in the administration of Rule B(2) and Rule B-3."
Samuel v. Univ. of Pittsburgh, 375 F.Supp. 1119, 1122 (W.D.Pa.1974).

Pittsburgh, 56 F.R.D. 435, 437 n. 1 (W.D.Pa.1972).

The plaintiffs assert that the rule denied female students equal protection of the laws. They sought both to have the operation of the Rule enjoined[4] and to have restitution made of such tuition amounts as were unconstitutionally collected. The district court certified the above-mentioned class in an opinion and order dated August 21, 1972. Samuel v. University of Pittsburgh, 56 F.R.D. 435 (W.D.Pa.1972). On October 5, 1972, the district court ordered the members of the plaintiff class to be individually notified at their representatives' expense. On April 10, 1974, the district court by opinion and order found for the plaintiffs on the ground of the rule's unconstitutionality, but at the same time "decertified" the class with respect to the class members' damage claims. Samuel v. University of Pittsburgh, 375 F.Supp. 1119 (W.D.Pa.1974). Motions of the plaintiffs to enter final judgment on the April 10, 1974, order pursuant to F.R. Civ.P. 54(b), and to certify the decertification of the class for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), were denied on May 1 and May 29, 1974, respectively. On June 7, 1974, the court ordered the defendant universities to send, at their own expense, an approved form of notice of decertification to the class members. The plaintiffs filed timely notice of appeal from this last order, which order was stayed by this court, pending appeal, on July 10, 1974.[5]

## I.

The plaintiffs-appellants assert this court's jurisdiction on the basis of criteria for application of the "collateral order doctrine" set forth in Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).[6] In *Eisen* the Court held that an order allowing a suit to proceed as a class action and allocating to the defendants a substantial portion of the cost of notifying the plaintiff class was a "final" decision within the meaning of 28 U.S.C. § 1291. Rejecting any "verbal formula," the Court found a touchstone for the interpretation of § 1291 in the " 'practical' " inquiry whether " 'the inconvenience and costs of piecemeal review' " outweigh " 'the danger of denying justice by delay,' " 417 U.S. at 171, 94 S.Ct. at 2149, quoting Cohen v. Beneficial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511, 70 S.Ct. 322, 94 L.Ed. 299 (1950). The Court reaffirmed two criteria in the *Cohen* decision:

"First, the District Court's finding was not 'tentative, informal or incomplete,' 337 U.S. at 546, 69 S.Ct. at 1225, 93 L.Ed. 1528, but settled conclusively the corporation's claim that it was entitled

---

**4.** On motion of the plaintiffs, a three-judge court was initially convened. On February 16, 1972, after the Pennsylvania Attorney General had withdrawn his approval of Rule B(2), see note 3, *supra,* the three-judge court dissolved itself. See Samuel v. Univ. of Pittsburgh, 375 F.Supp. 1119, 1122 (W.D.Pa.1974). The district court's April 10, 1974, order nevertheless "restrained" the defendant university officials "from making residency determinations as to married women on any basis other than that of objective criteria equally applicable to all students." Since we have found that we lack jurisdiction over this appeal, we do not reach the question whether such an order was properly entered by a single-judge district court.

**5.** Defendant Temple University apparently had sent the decertification notice to some members of the class before the court of appeals stayed the June 7, 1974, order.

**6.** When the refusal to grant class status "amounts to a denial of a preliminary injunction broader than would be appropriate for individual relief," an interlocutory appeal lies under § 1292(a)(1). Hackett v. Gen. Host Corp., 455 F.2d 618, 622 (3d Cir.), cert. denied, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972). However, § 1292(a)(1) is unavailable to the plaintiffs in this appeal because paragraph 1 of the district court's April 10, 1974, opinion and order granted injunctive relief on a class-wide basis. See n. 4, *supra.* Plaintiffs do not challenge the grant of injunctive relief in such paragraph 1 but do object to the decertification of the class for the purpose of determining damages.

by state law to require the shareholder to post security for costs. Second, the decision did not constitute merely a 'step toward final disposition of the merits of the case . . . . ' *Ibid.* Rather, it concerned a collateral matter that could not be reviewed effectively on appeal from the final judgment."

417 U.S. at 171, 94 S.Ct. at 2149.

We find that the second *Cohen* criterion is not met by the district court's June 7, 1974, order.[7] The plaintiffs believe that the second criterion is satisfied because the June 7 order "involves a matter unrelated to any issue remaining before the District Court" and the class plaintiffs "can proceed no further in the District Court," thus making the order "a final disposition of class Plaintiffs' rights."[8] Plaintiffs'-Appellants' Reply to Defendants'-Appellees' Motions to Dismiss at 5–6. Such an approach to the question of finality fails to confront the basic issue identified by the Court in *Eisen,* namely, whether the burdens of piecemeal review are justified by the injustice potentially resulting from delay.

The orders appealed from in *Eisen* and *Cohen* exemplify the sorts of matters which "could not be reviewed effectively on appeal from the final judgment." 417 U.S. at 171, 94 S.Ct. at 2149. In *Cohen* the district court, in the face of a statute which allowed a corporation to demand security for its litigation expenses from the plaintiffs in a stockholder's derivative action, had allowed the plaintiff to proceed without posting such security. 337 U.S. at 543–545, 69 S.Ct. 1221, 93 L.Ed. 1528. The order appealed from thus determined who would bear the risk of loss of the corporation's counsel fees during the pendency of the litigation. An improper allocation of risk created by the order could not have been repaired retrospectively in an appeal brought after the district court litigation had reached its conclusion. *Id.* at 546, 69 S.Ct. 1221, 93 L.Ed. 1528. Similarly, the district court in *Eisen* had allowed the plaintiff class to proceed without bearing, during the pendency of the litigation, the risk of loss of the expense of notification, in the face of the "usual rule . . . that a plaintiff must initially bear the cost of notice to the class." 417 U.S. at 178, 94 S.Ct. at 2153. If the Court had not allowed the appeal, the defendants might ultimately have prevailed on the merits and yet have been unable to recover the cost of notice from the representative plaintiffs.

The plaintiffs in the case now under appeal have shown no similar prejudice which could outweigh the burden of piecemeal review. Both in their brief opposing the defendants' motions to dismiss the appeal, see Plaintiffs'-Appellants' Reply to Defendants'-Appellees' Motions to Dismiss at 4 (footnote), and again at oral argument, the plaintiffs advanced the thesis that the June 7 order may cause members of the class who pursue their damage claims individually to incur litigation expenses which could prove to have been unnecessary if the decertification were reversed on appeal from a final judgment. The prejudice arising from delay would only arise if, on appeal from a judgment with respect to the named plaintiffs, the court of appeals found that the action had been improperly decertified, but found that the

---

**7.** Inasmuch as the first *Cohen* criterion addresses the question whether the order appealed from is sufficiently definite to be accessible to appellate review, it may be satisfied by the district court's June 7 order. By ordering the defendant universities to notify the class members of the decertification of their class, the district court "settled conclusively" the plaintiffs' claim that the damage issues should be determined on a class-wide basis. On the other hand, the June 7 order is still "tentative." There is nothing to prevent the district court from recreating the class for purposes of as yet undetermined issues in the case pursuant to Rule 23(c)(4). See *General Motors v. City of New York,* 501 F.2d 639, 647 n. 16 (2d Cir. 1974).

**8.** If the June 7 order were a final disposition of the claims of absent members of the plaintiff class, it would be certifiable for appeal under Rule 54(b). However, the district court's denial of a motion for Rule 54(b) certification is not challenged on this appeal. See n. 14, *infra.*

plaintiffs are not entitled to recover their litigation expenses.[9] In this situation, absent class members who, prior to the reversal of the decertification order, settled or brought their damage claims to judgment might incur litigation expenses greater than their proportionate share of the class' litigation expenses would have been.[10]

We do not find this possible prejudice to be sufficient to outweigh the burden of allowing the present appeal. It should not be unduly time consuming for the named plaintiffs to reduce their individual claims to judgment and bring a unitary appeal in which the damage and litigation expense awards, if any, can throw helpful light on the correctness of the challenged decertification order.[11] We take judicial notice of entries in the district court docket, which indicate that a hearing with respect to the named plaintiffs' damages was had on July 1, 1974.[12] Since there is no reason to believe that the proceedings in the district court will not continue with normal expedition, it is unlikely that great numbers of absent class members will incur substantial litigation expenses before a unitary appeal can be concluded.[13] For these reasons alone, we would find that the danger of injustice due to delay

is so slight that the collateral order doctrine should not be applied to the June 7 order.

More importantly, however, we do not believe that the loss to absent class members of the economies inherent in class action adjudication is the type of prejudice which the *Eisen* and *Cohen* decisions contemplated as justification for immediate appeal. Whenever a district court refuses to certify a class, there is some danger that absent class members will file individual suits, thus incurring litigation expenses which might prove to have been unnecessary if the denial of class status is ultimately reversed. The above rationale would render immediately appealable virtually every adverse class action determination. We cannot believe that the Supreme Court intended such a result by its reaffirmation of *Cohen* in *Eisen*. Instead, we maintain the position adopted by this Circuit in Hackett v. General Host Corp., 455 F.2d 618, 623–624 (3d Cir.), cert. denied, 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972), that the more desirable route through which aspiring class representatives should be required to obtain review of adverse class action determinations is the mechanism of F.R.Civ.P. 54(b) or 28 U.S.C. § 1292(b).[14] Under these provi-

---

**9.** It should be noted that the plaintiffs included a claim for their attorney's fees in their prayers for relief. Plaintiffs' Complaint at 10. If such litigation expenses are ultimately included in the named plaintiffs' damages, other class members who pursued their claims individually should be entitled to recover their litigation expenses as well. In this circumstance, no prejudice to the class members would result; instead, excess litigation expense due to lost economies of scale would be charged to the defendant universities, which are not appealing the June 7 order.

**10.** Plaintiffs also assert that if the decertification order is upheld on appeal, the expense of suing on an individual claim may deter many members of the class from asserting their claims. Plaintiffs'-Appellants' Reply to Defendants'-Appellees' Motions to Dismiss at 4 (footnote), 6 n. 1. This argument goes to the merits of the decertification order rather than its appealability; we therefore leave it for consideration in an appeal from a final judgment as to the named plaintiffs. See note 11, *infra*.

**11.** The June 7 decertification order will be open to review on appeal from final judgments with respect to the named plaintiffs. See, e. g., Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

**12.** The court of appeals may take judicial notice of developments in a case on appeal which have occurred in the district court after the appeal was filed. Doe v. Wohlgemuth, Nos. 74–1726 & 74–1727, slip opinion at 4, n. 5 (3d Cir., Dec. 10, 1974). The notice of appeal in the present case was filed on June 13, 1974, prior to the above-mentioned hearing.

**13.** At oral argument, counsel for Temple University represented that not a single absent class member had inquired about the case after notice of the decertification had been sent. See note 5, *supra*.

**14.** We do not here decide which provision is the preferable means of challenging the June 7 order. In Katz v. Carte Blanche Corp., 496 F.2d 747 (3d Cir.), cert. denied, —— U.S. ——,

sions the knowledge bred of the district court's proximity to the case can be brought to bear on the question of the propriety of immediate review.

The presence of such alternative routes for appellate review necessarily affects our judgment whether "the inconvenience and costs of piecemeal review" outweigh "the danger of denying justice by delay." The benefit of a district court's views as to appealability secured through certification under F.R. Civ.P. 54(b) or 28 U.S.C. § 1292(b) would be lost if aspiring class representatives were allowed to appeal, without such certification, adverse class action determinations under the collateral order doctrine. This loss, together with the additional burden placed on appellees and the appellate court whenever piecemeal appeals are permitted, greatly outweighs the danger that some class members may, by proceeding individually, lose the economies of scale associated with class treatment.[15]

## II.

 In their brief opposing defendants' motions to dismiss, the plaintiffs also appear to request this court to stay the district court's June 7 decertification order even if we find that we have no jurisdiction over the appeal. Plaintiffs'-Appellants' Reply to Defendants'-Appellees' Motions to Dismiss at 4 (footnote). If this court lacks jurisdiction, it cannot stay the proceedings in the district court. The equitable arguments for granting

such a stay, in fact, go to the question of our jurisdiction under the collateral order doctrine; they have been considered and rejected above.

Accordingly, that part of the July 10, 1974, order of this court which stayed the June 7, 1974, order of the district court will be vacated and the appeal dismissed for want of an appealable order under 28 U.S.C. § 1291.

---

95 S.Ct. 152, 42 L.Ed.2d 125 (1974), we held that an order allowing an action to proceed on a class basis was appealable under 28 U.S.C. § 1292(b), *id.* at 756, and that orders denying class action treatment may be certifiable under Rule 54(b), *id.* at 754. As noted by Professor Moore, where there is doubt about which provision should be invoked, the district court can certify under both provisions in the alternative. See 6 Moore's Federal Practice ¶ 54.30 [2.–2] at 456.

In the present case, the plaintiffs brought motions both under Rule 54(b) and under § 1292(b). The district court's denials of both motions have not been challenged by the plaintiffs. *Cf. Katz, supra* at 752.

15. The Second Circuit has allowed appeal under the collateral order doctrine where the order denying certification as a class sounds the "death knell" of the action. Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2d Cir. 1966), cert. denied, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967). The plaintiffs' argument herein would go far beyond the death knell doctrine by allowing appeal as a collateral order, even where class members' claims would be individually viable legal actions. In fact, the plaintiffs' argument only applies where absent class members are likely to bring individual actions. Thus, even the Second Circuit's "death knell" doctrine, with which this court has disagreed, see Hackett, *supra* n. 14, does not support the plaintiffs' position.