**Jo-Ann Evans GARDNER, Appellant,**

v.

**WESTINGHOUSE BROADCASTING COMPANY.**

**No. 76–1410.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) March 28, 1977.

Decided June 6, 1977.

Rehearing In Banc Denied July 22, 1977.

---

210

Robert N. Hackett, Joan P. Feldman, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, Pa., for appellant.

Wendell G. Freeland, Richard F. Kronz, Freeland & Kronz, Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, and ALDISERT and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question is whether a denial of a class certification can be immediately appealed under 28 U.S.C. § 1292(a)(1)[1] on the theory that the denial amounts to the denial of an injunction. The circuits are divided on the question. Although the theory of § 1292(a)(1) appealability has been mentioned in dictum in several opinions in this circuit, especially *Hackett v. General Host Corp.*, 455 F.2d 618 (3d Cir. 1972), we have never applied it to permit such an appeal, nor have we ever directly adjudicated its validity. Upon consideration, we believe that the theory is unworkable as an exception to the general rule in this circuit limiting the appealability of class determinations and that it is unwarranted in its expansion of the narrow purposes of § 1292(a)(1). Accordingly, we reject the theory of § 1292(a)(1) appealability and grant appellee's motion to dismiss the appeal.

### I.

This civil rights action was commenced by the plaintiff, Jo-Ann Evans Gardner, on her own behalf and on behalf of a class of similarly situated women alleging sex discrimination in the employment practices of the defendant, Westinghouse Broadcasting Company. The complaint sought injunctive and monetary relief, and attorney's fees.

---

1. *§ 1292. Interlocutory decisions*

(a) The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

Shortly after commencing the action, Ms. Gardner moved for a class certification under F.R.Civ.P. 23(b)(2). Interrogatories were served. After Westinghouse failed to respond fully to certain interrogatories, Ms. Gardner moved to compel discovery. After oral argument, the district court denied both motions, ruling that there were no questions of law or fact common to the class, that plaintiff's claim was not typical, and that there was no need to consider the discovery motion in light of the denial of class status. No further rulings were made. Without obtaining a certificate under 28 U.S.C. § 1292(b),[2] Ms. Gardner filed an appeal from the denial of her class action motion asserting 28 U.S.C. § 1292(a)(1) as the jurisdictional predicate. Westinghouse moved to dismiss the appeal for lack of jurisdiction. That motion has been referred to this panel and is now before us.

## II.

Ms. Gardner places primary reliance on the dictum in *Hackett v. General Host Corp.*, 455 F.2d 618, 622 (3d Cir. 1972), which suggested that interlocutory review of a class denial might be had under § 1292(a)(1) "in those cases in which the refusal to grant class action designation amounts to a denial of a preliminary injunction broader than would be appropriate for individual relief." That suggestion was repeated in *Samuel v. University of Pittsburgh*, 506 F.2d 355, 358 n.6 (3d Cir. 1974), in *Rodgers v. United States Steel Corp.*, 508 F.2d 152, 160 (3d Cir. 1975), and again in a later aspect of the same case, *Rodgers v. United States Steel Corp.*, 541 F.2d 365, 372–73 (3d Cir. 1976). In none of these

cases was the suggestion found to be applicable. In *Hackett* itself, interlocutory review of a class determination was refused. Thus, though it has not been expressly rejected in this circuit, neither has the *Hackett* suggestion ever been applied. This case directly presents the issue whether such an interpretation of § 1292(a)(1) can be squared either with the strong and consistent policy in this circuit of discouraging piecemeal appellate review, or with the special and narrow purposes of § 1292(a)(1).

## A.

Following Judge Gibbons' seminal opinion in *Hackett*, this court, *in banc*, and again speaking through Judge Gibbons, enunciated what has become the core principle of class determination appealability in this circuit. "A class action determination, affirmative or negative, is not in this circuit a final order appealable under 28 U.S.C. § 1291. . . . [I]f there is any route open for the interlocutory review of a grant of class action treatment under rule 23(b)(3) in this circuit, it is only pursuant to 28 U.S.C. § 1292(b)." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 752 (3d Cir. 1974). *Katz* adjudicated the particular issue of a class certification granted under F.R.Civ.P. 23(b)(3). In other applications, however, the *Katz* principle has not been so limited. The requirement of a § 1292(b) certificate as a prerequisite to considering the case for interlocutory review has been applied neutrally to denials as well as grants of class status and it has been applied to classes sought under rule 23(b)(2) as well as rule 23(b)(3).[3]

2. *§ 1292. Interlocutory decisions*

　　　.　　　.　　　.　　　.　　　.

　　(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it

within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

3. *Link v. Mercedes-Benz*, 550 F.2d 860 (3d Cir. 1976); *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir. 1976); *Ungar v. Dunkin' Donuts*, 531 F.2d 1211 (3d Cir. 1976); *Rodgers v. United States Steel Corp.*, 508 F.2d 152 (3d Cir. 1975); *Samuel v. University of Pittsburgh, supra*; *Hackett v. General Host Corp., supra.*

■ Our policy on this question derives, in part, from a balancing of "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511, 70 S.Ct. 322, 329, 94 L.Ed. 299 (1950). We do not deny the importance of the class determination in many cases. Indeed, we have recently recognized that "class action determination has significant, practical effects on the litigation and an aggrieved party may have a very real interest in securing early appellate review." *Link v. Mercedes-Benz*, 550 F.2d 860, 862 (3d Cir. 1976) (*in banc*) (plurality opinion). But the possible effects of a ruling are not determinative of whether it can be immediately appealed. Evidentiary rulings, for example, can be critically important but they are not the proper subject of an interlocutory appeal. The question is whether the *delay* in review will work an injustice. In the case of an application for an injunction, especially a preliminary injunction, the urgency of the matter is obvious. The request for an injunction goes to the merits of the case and delayed review may be the practical equivalent of no review. But a class determination does not partake of the same urgency. A decision on class status is wholly procedural. It is normally within the discretion of the trial court, *see Link v. Mercedes-Benz, supra*, 550 F.2d at 862; it may be conditional, subject to alteration or amendment prior to final judgment, F.R. Civ.P. 23(c)(1); and it does not implicate the merits of the case at all. If, after judgment on the merits, the relief granted is deemed unsatisfactory, the question of class status is fully reviewable. The delay involved is the same delay that accompanies review of all interlocutory procedural rulings in a case, and the delay in no way diminishes the power of the court upon review to afford full relief.

We perceive no irremediable consequences flowing from a postponement of review. At the same time, we do envision, in the rule here contended for, a sure and quick evisceration of our general policy against interlocutory review of class determinations. The adoption of the rule would not discourage attempts at interlocutory review, it would encourage them. Obviously, a prayer for an injunction can easily be added in most, if not all, purported class actions. Moreover, if we accepted the proposition that a refusal of class status could amount to a denial of an injunction, there is no reason why it could not also be argued that a grant of class status could amount to a grant of an injunction under § 1292(a)(1). *See Illinois Migrant Council v. Pilliod*, 540 F.2d 1062, 1072 (7th Cir. 1976). That, at least, would be a neutral application of the concept. It is true that, under the precise dictum of *Hackett*, not every refusal of a class is appealable. The refusal must "amount to" a denial of an injunction. But we would face in each case the question whether the particular refusal did or did not amount to the denial of an injunction. We would be faced with piecemeal review of that issue and the general rule of § 1291 and *Katz* would be effectively swallowed up by the § 1292(a)(1) exception.

### B.

■ The purposes of § 1292 are narrow. The statute recognizes the necessity "to permit litigants to effectively challenge interlocutory orders of serious, perhaps irreparable, consequence." *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955). The statute, however, does not leave the courts free to decide which interlocutory orders are appealable. It sets forth the exceptional orders specifically.[4]

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or re-

4. In addition to the exception for orders relating to injunctions, § 1292 sets forth four other specific and precise exceptions to the final judgment rule:

§ 1292. Interlocutory decisions

(a) The courts of appeals shall have jurisdiction of appeals from:

The exception for orders relating to injunctions, understandably, has been the subject of litigation before. In *Morgenstern Chemical Co. v. Schering Corp.,* 181 F.2d 160, 162 (3d Cir. 1950), it was argued that a denial of summary judgment amounted to a denial of an injunction where the complaint sought injunctive relief. Speaking through Judge Hastie, this court rejected the argument:

> [T]he order below lacks the potential of drastic and far reaching effect on the rights of the parties which is characteristic of orders which decide the propriety of granting or refusing injunctions. Such potential supplies the rational basis for the incursion upon the general policy proscribing interlocutory appeals in the exceptional situations covered by § 1292. This view has recently been expressed by the Supreme Court in its statement that § 1292 indicates "the purpose to allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties." *Cohen v. Beneficial Indus. Loan Corp.,* 1949, 337 U.S. 541, 545, 69 S.Ct. 1221, 1225 [93 L.Ed. 1528]. Similarly, in this circuit we have said, "The manifest purpose of the statute is to enable a litigant to seek prompt review in an appellate court from an order or decree which in most instances is effective upon its rendition and is drastic and far reaching in effect." *Maxwell v. Enterprise Wall Paper Co.,* 3 Cir., 1942, 131 F.2d 400, 402. Thus, to construe § 1292 as applicable to the present order would

unnecessarily divorce the meaning of the language used from its apparent purpose.

The Supreme Court rejected an identical argument concerning the effect of a denial of summary judgment in *Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc.,* 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966). A denial of a motion for summary judgment, said the Court, "is strictly a pretrial order that decides only one thing—that the case should go to trial." More generally, the Court emphasized that "[o]rders that in no way touch on the merits of the claim but only relate to pretrial procedures are not in our view 'interlocutory' within the meaning of § 1292(a)(1)." *Id.* at 25, 87 S.Ct. at 195.

■ We understand the conceptual basis of the theory advanced by Ms. Gardner. She argues that the ultimate injunctive relief in a successful action may be narrower if class status is denied than if class status were granted. But this effect will occur, if at all, only after a decision on the merits of the prayer for injunctive relief. Prior to that time, an order denying a class certification does not "touch on the merits of the claim" nor does it have "final and irreparable effect on the rights of the parties." In sum, a class determination, affirmative or negative, lacks the immediate and drastic consequences which attend an injunction and which form the basis for excepting injunctive rulings from the final judgment rule.

fusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

(2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;

(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed;

(4) Judgments in civil actions for patent infringement which are final except for accounting.

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance *the ultimate termination of the litigation,* he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

We recognize the division of the circuits on this issue. The First, Fourth, Fifth, and Ninth Circuits [5] have accepted the proposition that a class determination, at least in some instances, may be appealed under § 1292(a)(1). The Second and District of Columbia Circuits [6] have rejected that proposition. Today we align ourselves with the latter courts in holding that a class action determination may not be appealed under § 1292(a)(1). The only mode of interlocutory review in this circuit will continue to be pursuant to § 1292(b).

The motion to dismiss the appeal will be granted.

SEITZ, Chief Judge, concurring.

The argument that the denial of class certification amounts to an injunction is that some injunctive relief which might be appropriated in a class action would not be appropriate in an individual suit by the named plaintiff. Thus, it is argued, the decision to refuse certification effectively limits the scope of injunctive relief which might be granted. *See Hackett v. General Host Corp.*, 455 F.2d 618 (3d Cir. 1972). The majority's response to this argument is, at least in part, that the decision not to certify does not foreclose the grant of class-wide injunctive relief because this decision can always be reviewed after final judgment, and the application for class certification and class-wide relief renewed in the district court. Thus, they say "[t]he ques-

tion is whether the *delay* in review will work an injustice . . . [i]f, after judgment on the merits, the relief granted is deemed unsatisfactory, the question of class status is fully reviewable. The delay involved is the same delay that accompanies review of all interlocutory procedural rulings in a case, and the delay in no way diminishes the power of the court upon review to afford full relief."

Thus, the majority's analysis depends on its position that the refusal to certify is always reviewable after final judgment. While I believe that this position is correct, it deserves greater explication than the majority has given it.[1]

If the district court should deny Ms. Gardner the individual relief she has sought, she could, of course, raise the district court's failure to certify along with her other assignments of error on appeal after final judgment. But the problem would be different on the eventuality that the district court *grants* her the individual relief she has sought. This contingency poses a question of Article III justiciability, namely, whether Ms. Gardner would have standing to appeal the district court's refusal to certify even though she would no longer have personal relief in the balance. If Ms. Gardner would not have standing to appeal the district court's refusal to certify after she had obtained the individual relief she has requested, the court's refusal to

---

**5.** *Doctor v. Seaboard Coast Line R. R.*, 540 F.2d 699 (4th Cir. 1976); *Jones v. Diamond*, 519 F.2d 1090 (5th Cir. 1975); *Price v. Lucky Stores, Inc.*, 501 F.2d 1177 (9th Cir. 1974); *Yaffe v. Powers*, 454 F.2d 1362 (1st Cir. 1972); *Spangler v. United States*, 415 F.2d 1242 (9th Cir. 1969); *Brunson v. Board of Trustees*, 311 F.2d 107 (4th Cir. 1962); see *Illinois Migrant Council v. Pilliod*, 540 F.2d 1062 (7th Cir. 1976).

**6.** *Williams v. Mumford*, 167 U.S.App.D.C. 125, 511 F.2d 363 (1975); *City of New York v. International Pipe and Ceramics Corp.*, 410 F.2d 295 (2d Cir. 1969) (semble).

**1.** Portions of the majority's opinion indicate that, apart from the argument that the certification decision is reviewable after final judgment, the refusal to certify cannot be deemed to constitute the denial of an injunction because this refusal does not directly deny injunc-

tive relief. In view of my conclusion that the certification decision is appealable after final judgment, I need not reach this alternative possible ground of decision. But I note that any argument that an order must directly grant or refuse injunctive relief to be appealable under § 1292(a)(1) is not readily reconcilable with *General Electric Co. v. Marvel Rare Metals Corp.*, 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (1932), where the Supreme Court sustained the appealability of an order which dismissed a counterclaim for improper venue.

I also note that Ms. Gardner's complaint on behalf of herself and the class does not request temporary injunctive relief. I need not decide whether the disposition of this case should be different if she had. *See Stewart-Warner Corp. v. Westinghouse Electric Corp.*, 325 F.2d 822, 829–30 (Friendly, J., dissenting) (2d Cir. 1963).

certify *could* have the effect of reducing the ultimate scope of injunctive relief.

The Supreme Court's decisions in *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) and *Board of School Comm'rs v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975) provide some guidance as to whether Ms. Gardner would have standing. *Sosna* involved the constitutionality of Iowa's requirement that a petitioner in a divorce action be a resident of the state for one year prior to the filing of the petition. After the district court had certified the suit as a class action but before the case reached the Supreme Court, the named plaintiff had satisfied the one year residence requirement. The Supreme Court nevertheless held that the suit was justiciable under Article III. "When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant." 419 U.S. at 399, 95 S.Ct. at 557. On the other hand, in *Jacobs* the Supreme Court held the case moot when the named plaintiffs had lost their personal interest in the outcome after the district court purported to certify the suit as a class action. The Court stressed that the district court had not properly certified or even identified the class, and had not adequately determined that the criteria of Rule 23 were satisfied.

The general rule which would appear to emerge from *Sosna* and *Jacobs* is that a named plaintiff must have a live personal stake in the suit at the time the class is properly certified. Thereafter, the suit may be entertained without violating Article III even though no named plaintiff has a live personal stake, as long as the class has a continuing interest. The application of this rule here would seem to indicate that the successful individual plaintiff could not appeal the refusal to grant class status after final judgment, since any decision by the district court, on remand from this court, to certify the class would postdate the time when the named plaintiff lost her personal stake—at the time of the original judgment in her favor. But in footnote 11 of its opinion in *Sosna*, the Supreme Court indicated that the apparent general rule is not ironclad:

There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

Footnote 11 of *Sosna* was relied on in *Gerstein v. Pugh*, 420 U.S. 103, 110 at n.11, 95 S.Ct. 854, 861, 43 L.Ed.2d 54. In *Pugh*, named plaintiffs had been incarcerated without a judicial determination of probable cause. The Supreme Court said that:

At the time the complaint was filed, the named respondents were members of a class of persons detained without a judicial probable cause determination, but the record does not indicate whether any of them were still in custody awaiting trial when the District Court certified the class. Such a showing ordinarily would be required to avoid mootness under *Sosna*. See *Sosna*, supra, [419 U.S.] at 402 [95 S.Ct. 553] n.11; (citation omitted). The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is clear. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case.

### 1. *Relation Back Under Footnote 11 of* Sosna.

While footnote 11 does not purport to give an exhaustive description of the cir-

cumstances in which certification may be deemed to relate back to the filing of the complaint, it does not expressly allow relation back in circumstances other than those in which a controversy has such an inherently short cycle that a district court could not be expected to rule on a motion for certification before the named plaintiff's personal stake has expired. But the Court's language has not always been narrowly read.[2] In *Allen v. Likins*, 517 F.2d 532 (8th Cir. 1975), the court indicated that relation back is permissible when the district court has unduly delayed its decision on certification. In *Frost v. Weinberger*, 515 F.2d 57 (2d Cir. 1975), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976), Judge Friendly said that the "apparent force" of the general rule stated in *Sosna* was "largely drained" by footnote 11. In *Frost*, the widow and two children of a deceased who had been insured under the Social Security Act claimed that the Social Security Administration had deprived them of benefits they deserved without a full evidentiary hearing. After they filed their complaint on behalf of "all persons who now or may in the future be entitled to survivors' benefits under the Act whose benefits have been or may be reduced without a prior hearing," the district court ordered the Secretary of Health, Education and Welfare to conduct a full hearing on their claims within a month, and the Secretary did so. Subsequently, the court certified the class. The defendants claimed that the case should be dismissed as moot, because the named plaintiffs had already been given the hearing which they claimed was required by due process when the district court certified the class. In rejecting this argument, Judge Friendly said:

> The reason for generally requiring that the controversy be "live" as to the named plaintiff at the time of the class action designation is that otherwise the court would have no assurance that the named plaintiff will vigorously represent the class. This has little application when, as here, the court has deferred class action

determination, with the agreement of all parties, pending a ruling on the merits. The Government has pointed to no respect in which this case would have proceeded differently if the court had certified this as a class action on November 16, 1973, rather than in its decision of May 3, 1974. If as Mr. Justice White said with some justification in his dissent in *Sosna*, 419 U.S. at 412, 95 S.Ct. at 564 (footnote omitted), "The only specific, identifiable individual with an evident continuing interest in presenting an attack upon the residency requirement is appellant's counsel" and, if the Court had overcome this by a "legal fiction" consisting of "the reification of an abstract entity, 'the class', constituted of faceless, unnamed individuals who are deemed to have a live case or controversy against appellees," it scarcely can be consequential in a case like this whether the named plaintiff had obtained a hearing in the period which, with the agreement of the parties, the court took to make its class action determination. 515 F.2d at 64.

To the extent that the Supreme Court's opinion in *Sosna* relies upon legal fictions, I agree with Judge Friendly that it cannot be deemed to identify the real considerations which must guide any determination of whether a case is justiciable under Article III. While the Court's determination that class certification brings new interests before the court does not appear to involve a legal fiction, the device of relation back clearly does, and thus it is important to identify the real considerations which motivate the use of this device.

The Supreme Court's apparent concern is that if the named plaintiff's stake expired before the class was certified and thus "acquired a legal status separate from the interest asserted by [named plaintiff]," there would be a hiatus in which there would be no live interests before the court. Use of the relation back device may alleviate this concern by recasting the facts so that the interests of the class are deemed to have been presented to the court at a time when the named plaintiff had a live stake.

**2.** *But cf. Napier v. Gertrude*, 542 F.2d 825 (10th Cir. 1976).

But the concern that there might be an interval in which no live interests are before the court is not, in my opinion, a compelling one. In the first place, the fact of the matter is that in any case—such as *Pugh*—in which the device of relation back is used there will have been such an interval. It is true that footnote 11 of *Sosna* does not explicitly allow extension of the relation back device to cases other than those where the controversy tends to dissipate before class certification can be expected, and that the footnote states that the applicability of relation back "may depend . . . especially [upon] the reality of the claim that otherwise the issue would evade review." But it would appear that to the extent the "capable of repetition, yet evading review" criterion would be relevant to justiciability, it would bear on the "discretionary decision whether to reach the merits of an issue, rather than [the] Art. III 'case or controversy' requirement." *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 781, 96 S.Ct. 1251, 1272, 47 L.Ed.2d 444 (Powell, J., concurring in part and dissenting in part).

In some circumstances, the "capable of repetition, yet evading review" criterion *is* relevant to whether Article III has been satisfied. In *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975), the Court said:

> *Sosna* decided that in the absence of a class action, the "capable of repetition, yet evading review" doctrine was limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again. The instant case, not a class action, clearly does not satisfy the latter element.

In the context of *Bradford*, the fact that the same complaining party might reasonably be expected to be subjected to the same action again is undoubtedly relevant to whether Article III is satisfied. If an individual plaintiff can show that there is "a reasonable expectation that [he will] be subjected to the same action again," he can show that he continues to have a personal interest in the outcome of the case, despite apparent mootness. On the other hand, if he cannot show that the question is "capable of repetition" as to himself, he will fail to show that he continues to have a personal interest in the outcome of the case. Thus, my reading of *Bradford* indicates that the doctrine of "capable of repetition, yet evading review," when it bears upon Article III, is a way of demonstrating that the constitutional requirement of "case or controversy" is really met, despite apparent mootness. The doctrine does not function to provide an *exception* to the constitutional requirement. In fact, it would seem improper to make an exception to the requirements set forth in the broad language of Article III.[3]

On the other hand, there are circumstances in which the doctrine of "capable of repetition, yet evading review" goes to the "discretionary decision to reach the merits of an issue, rather than [the] Art. III 'case or controversy' requirement." In *Sosna*, the Supreme Court mentioned that one factor weighing in favor of justiciability was that Iowa's one year residence requirement for filing a divorce was so short that it tended to evade review. But in *Franks v. Bowman Transp. Co., supra*, the Court said: "nothing in our *Sosna* or [*Jacobs*] opinions holds or even intimates that the fact that the named plaintiff no longer has a personal stake in the outcome of a certified class action renders the class action moot unless there remains an issue 'capable of repetition, yet evading review.'" (citation omitted) 424 U.S. at 754, 96 S.Ct. at 1259. Rather, the Court felt that the "capable of repetition, yet evading review" criterion went to the discretionary component of justiciability, and that Article III was satisfied solely because the interests of the class were before the court.

---

**3.** In *United States v. Richardson*, 418 U.S. 166, 179–80, 94 S.Ct. 2940, 2947, 41 L.Ed.2d 678 (1974), the Court indicated that standing is not conferred by virtue of the fact that "if respondent is not permitted to litigate this issue, no one can do so."

With respect to relation back, it would seem that the doctrine of "capable of repetition, yet evading review" would only be relevant to any constitutional requirement that there *always* be live interests before the court if the doctrine is a way of demonstrating that such a constitutional requirement is in fact satisfied even where it might not appear to be. If the doctrine does not serve as a way of showing that there continue to be live interests before the court, then it goes to the discretionary component of justiciability, and the fact that the Supreme Court mentioned the doctrine in footnote 11 of *Sosna* does not imply that there is any constitutional requirement that there be live interests before the court at every moment of a lawsuit.

The fact that a case presents an issue which may well become moot as to the named plaintiff before class certification can be expected does not imply that during the interval between mootness with respect to the named plaintiff and class certification there continue to be live interests before the court.[4] Thus, the fact that footnote 11 of *Sosna* mentions the question of whether a controversy tends to dissipate before class certification does not imply that there is a constitutional requirement that there be live interests before the court at every moment of a lawsuit. In fact, since footnote 11 allows relation back and since the evading review consideration does not speak to Article III, it would seem that footnote 11 implies that there is *no* constitutional requirement that there be live interests before the court at every moment of a lawsuit.

I find any argument that there should be such a requirement unconvincing. There is no reason why holding a case in abeyance until live interests come before the court should mean that the case will not go forward with the necessary concreteness and adverseness. See *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). I would view any contention that a court must at all times have a live plaintiff before it and cannot consider adding new interests to repair any deficiency as barren of reality. This is not to say that the class may be certified at any time, but merely that Article III does not divest courts of all discretion to consider adding new parties—even after final judgment—after it appears that former parties have lost their personal stake.[5]

Moreover, as to the discretionary component of justiciability, I believe that this court should entertain an appeal from the district court's refusal to certify the class by a named plaintiff who has received all the individual relief she has requested, at least when the named plaintiff made a timely motion for class certification in the original proceedings. The contrary position would insulate from appellate review a decision of far reaching consequences,[6] and might frustrate the interests of judicial economy since it would encourage a multiplicity of lawsuits in conditions where a class action would be the preferable mode of adjudication.

In sum, I conclude that footnote 11 in *Sosna* should be given an expansive reading, so that Ms. Gardner, even if she obtains all the individual relief she has requested, would have standing to seek reversal of the district court's decision not to certify.

---

**4.** In *Gerstein v. Pugh*, 420 U.S. at 110–11 n.11, 95 S.Ct. 854, the Court appeared to look to whether the issue was capable of repetition as to the class members, not as to the named plaintiffs.

**5.** I agree with *Napier v. Gertrude, supra* n.2, that the fact that the Supreme Court in *Jacobs* did not remand for proper application of F.R. Civ.P. 23 does not weigh against my position, since "[t]he Court did not rule . . . that mootness removed its power to remand, and it does not appear that the failure to certify the class action was assigned as error . . . ." 542 F.2d 825, 827.

**6.** Even if we should hold that district's refusal to certify in *this* case may be brought up on an interlocutory appeal because it cannot be reviewed after final judgment, there would still be cases which could not be appealed under § 1292(a)(1) because the complaint does not seek injunctive relief. See *Hackett v. General Host Corp.*, 455 F.2d 618 (3d Cir. 1972).

### 2. The Named Plaintiff's Continuing Interest.

The relation back device found in footnote 11 of *Sosna* rests on the theory that upon certification, the interests of the *class* are before the court. But even apart from my conclusion that footnote 11 poses no barrier to, and impliedly permits certification after the named plaintiff's claim is already moot, I believe that the successful named plaintiff could complain of the district court's failure to certify the class because he has the continued *personal* interest of exercising his fiduciary responsibilities with respect to the members of the class he has sought to represent.

The Supreme Court has apparently never expressed, or been asked to express, any view on the theory that the putative named plaintiff of a class action has a personal interest which stems from the fact that he is a fiduciary with respect to the members of the class. But there are several indicia of the fact that filing an action with a request for class treatment imposes a fiduciary responsibility upon the putative named plaintiff: 1) even before class certification, the action may not be settled or dismissed without court approval,[7] *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970), 2) F.R.Civ.P. 23(a)(4) requires as a prerequisite for certification that "the representative parties will fairly and adequately protect the interests of the class", 3) F.R.Civ.P. 23(d)(2) gives the court power to issue orders "requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or

defenses, or otherwise to come into the action," *see Knuth v. Erie-Crawford Dairy Co-op. Assoc.*, 395 F.2d 420 (3d Cir. 1968). The fiduciary responsibility of representative parties also, in my view, explains why class representatives may ever raise matters bearing on the interests of class members even though they have no tangible personal interest in these matters—including the very question of class certification.

I conclude that whether on the relation back theory found in footnote 11 of *Sosna*, or on the theory that Ms. Gardner has a continuing personal stake stemming from the fact that she is a fiduciary on behalf of the putative class, she would be able to appeal the district court's refusal to certify after final judgment even though she receives all the individual relief which she has requested. Since the district court's refusal to certify will always be appealable after final judgment, it can hardly be said that the court's decision has foreclosed the possibility that the class could ultimately be certified and class-wide relief granted. Thus, the court's refusal does not amount to an injunction for purposes of § 1292(a)(1), and the present interlocutory appeal must be dismissed.

## ON SUR PETITION FOR REHEARING

Before SEITZ, Chief Judge, and ALDISERT, ADAMS, GIBBONS, HUNTER and GARTH, Circuit Judges.[*]

The petition for rehearing filed by Appellant in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

---

**7.** In determining that Article III does not always require that a named plaintiff's personal stake continue throughout the litigation, *Sosna*, 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 at n.8 mentioned that "Once the suit is certified as a class action, it may not be settled or dismissed without the approval of the court."

[*] Circuit Judges Rosenn and Weis did not participate in the consideration of this matter.

**220**

GIBBONS, Circuit Judge, dissenting.

I dissent from the denial of appellant's petition for rehearing *in banc.* That petition presents an issue which meets every criterion for *in banc* reconsideration far more than most cases that this court has recently so considered. *See* Fed.R.App.P. 35(a); *Walton v. Eaton Corp.,* ——— F.2d ——— (3d Cir. filed July 18, 1977) (Gibbons, J., dissenting). Moreover, the panel opinion, in a case in which it was not even necessary to reach the question, has announced a broad prohibition against reviewability of *pendente lite* denials of class action injunctive relief in civil rights cases. Such a prohibition is inconsistent with the prior law of this circuit, inconsistent with the better reasoned decisions in other circuits,[1] and unsound except as an indication of hostility to the underlying rights being asserted. In that unarticulated hostility, of course, lies the explanation for the decision.

As Judge Aldisert's opinion for the panel majority acknowledges, the seminal opinion in this circuit on the reviewability of class action determinations is *Hackett v. General Host Corp.,* 455 F.2d 618 (3d Cir. 1972), *cert. denied,* 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972), in which we declined to adopt the so-called "death knell" rule of the Second Circuit, that an order denying a motion to permit a case to proceed as a class action may be reviewable as a collaterally final order within the meaning of 28 U.S.C. § 1291 and *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). But while *Hackett* declined to treat a negative class action determination as a final order it carefully preserved the right to seek appellate review under 28 U.S.C. § 1292(a)(1) where the denial of class certification amounts to the denial of preliminary injunctive relief. In *Hackett,* we specifically referred to

" . . . those cases in which the refusal to grant class action designation amounts to a denial of a preliminary injunction broader than would be appropriate for individual relief. 28 U.S.C.

§ 1292(a)(1). *See, e. g., Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496 (5th Cir. 1968); *Shapiro, Bernstein & Co. v. Continental Record Co.,* 386 F.2d 426 (2d Cir. 1967); *Brunson v. Board of Trustees,* 311 F.2d 107 (4th Cir. 1962). This category of interlocutory appeals is adequate, we think, to protect against most district court inhospitality to class action litigation involving civil rights, the elective franchise, protection of the environment and the like."

455 F.2d at 622. The point made in *Hackett,* a point that, in my view at least, was the essential justification for rejecting the Second Circuit's "death knell" rule as announced in *Eisen v. Carlisle & Jacquelin,* 370 F.2d 119 (2d Cir. 1966), *cert. denied,* 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967), was that in civil rights litigation, injunctive relief in favor of a single plaintiff usually would do nothing whatsoever for the remaining members of the class. A single black child might be placed in a white school, while all of the child's fellow black classmates were left in a segregated school. In such a case the denial of class action treatment would have the practical effect of denying injunctive relief to the entire class. Moreover, the key issue in such a case, and the key issue in the position taken by the panel majority, is the availability of *pendente lite* injunctive relief. *Hackett* concluded that we did not need the *Eisen* interpretation of § 1291 because a denial of *pendente lite* relief benefiting a class, in the guise of a denial of class action treatment, was reviewable under § 1292(a)(1). Now, without taking the case *in banc,* a panel majority has overruled the very fundamental premise on which our *Hackett* holding rests. It has done so, moreover, despite the fact that we reiterated that premise in *Rodgers v. United States Steel Corp.,* 541 F.2d 365, 372–73 (3d Cir. 1976); *Rodgers v. United States Steel Corp.,* 508 F.2d 152, 160 (3d Cir. 1975) and *Samuel v. University of Pittsburgh,* 506 F.2d 355, 358 n. 6 (3d Cir. 1974).

---

1. See note 2 *infra.*

In *Hackett* we also noted the availability of appellate review, in cases where the denial of class action relief might not amount to the denial of injunctive relief benefiting a class either under 28 U.S.C. § 1292(b) or under Fed.R.Civ.P. 54(b). A plurality of this court *in banc* has demonstrated a determination to make the § 1292(b) route a practical impossibility. *See Link v. Mercedes-Benz of North America, Inc.,* 550 F.2d 860, 870 (3d Cir. 1977) (Gibbons, J., dissenting). The court has also erected a major, useless, and frequently disregarded impediment to the utilization of Rule 54(b). *See Allis Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360 (3d Cir. 1975). Thus, each of the alternative safeguards upon which we premised the *Hackett* holding has now been eliminated or substantially eroded.

The panel majority opinion need not have reached out to overrule completely the fundamental premise of the *Hackett* holding in this case. It could have noted, as Judge Seitz' concurrence does at note 1, that the complaint in this case did not request *pendente lite* relief in favor of the proposed class. Thus the majority could have restricted its language so as to apply its rejection of § 1292(a)(1) appealability to that situation only, leaving open the possibility of an appeal when the putative class representative did seek *pendente lite* relief. Instead, in sweeping language, it totally rejects a substantial and well considered body of authorities which recognize the appealability of denials of class certification under § 1292(a)(1) where the denial amounts to a rejection of *pendente lite* injunctive relief.[2]

The only explanation we are given in defense of this broad judicial pronouncement is the brief sentence: "We perceive no irremediable consequences flowing from a postponement of review." Majority Op. at 212. That is indeed a faulty perception.

If class action *pendente lite* relief is denied in a voting rights case, elections will pass before the case reaches us on final hearing, and class members will have been disenfranchised at those elections. If class action *pendente lite* relief is denied in a school desegregation case, class members will remain for years in segregated classrooms, suffering the permanent psychological effects of inadequate educational opportunities. If class action *pendente lite* relief is denied in an employment discrimination case, years will go by during which class members remain locked in dead end jobs lacking challenge, stimulation, and opportunity for intellectual growth. To suggest that these would not be irremediable consequences is to make a mockery of equitable principles respecting *pendente lite* relief, and to defy the intention of Congress when it provided in the Evarts Act, Act of March 3, 1891, 26 Stat. 826, for appellate review of grants or denials of injunctive relief.

I find most disturbing the signals which have gone out from this court to the district courts of this circuit with respect to class action determinations. We seem to be saying that we have totally abdicated all responsibility for making Rule 23 serve its intended remedial purposes. This last signal is the most disturbing of all, because it removes completely from appellate review *pendente lite* review of denials of class action injunctive relief in civil rights cases. In most economic class action cases, *e. g.,* cases under § 10(b) of the Securities Act of 1934,[3] a preliminary injunction in favor of the individual plaintiff will, for all practical purposes, fully protect the entire class. A preliminary injunction against a deceptive practice or a false proxy statement will terminate the ongoing effect of either. In such case a denial of *pendente lite* injunctive relief in the individual's case will be appealable, and that appeal will inure to the

---

2. *Doctor v. Seaboard Coast Line R. R.,* 540 F.2d 699 (4th Cir. 1976); *Jones v. Diamond,* 519 F.2d 1090 (5th Cir. 1975); *Price v. Lucky Stores, Inc.,* 501 F.2d 1177 (9th Cir. 1974); *Yaffe v. Powers,* 454 F.2d 1362 (1st Cir. 1972); *Spangler v. United States,* 415 F.2d 1242 (9th Cir. 1969); *Brunson v. Board of Trustees,* 311 F.2d

107 (4th Cir. 1962); see *Illinois Migrant Council v. Pilliod,* 540 F.2d 1062 (7th Cir. 1976).

3. 15 U.S.C. § 78j(b); *See* Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (1974).

benefit of the economic class whether or not the district court granted class action treatment. Thus, instances in which an economic class will be subjected *pendente lite* to a continuing course of illegal conduct will be comparatively rare.

In the civil rights area of the law, however, an individual voter may be registered and allowed to vote *pendente lite,* an individual child plaintiff may be transferred and enrolled *pendente lite* in a desegregated school, an individual female may be promoted *pendente lite,* while the discrimination against the class of which he or she was a member continues. If the district judge is favorably disposed to the underlying civil rights claim, grants class action treatment, and affords injunctive relief benefiting the class, the defendant will be able to appeal under § 1292(a)(1). If, however, that district judge is unfavorably disposed, the panel majority opinion has indicated to him precisely how to shield from an appellate review his unwillingness to grant *pendente lite* relief to the class.

All of our opinions dismantling opportunities for review of district court actions in class action cases refer, in one way or another, to the diluvian consequences upon our caseload of any other than door closing rules. In *Link v. Mercedes Benz, supra,* I observed that an actual count of § 1292(b) applications belied any need for such a concern. 550 F.2d at 873–74. I am equally convinced that dismantling of the protection afforded to potential class members by the availability of *pendente lite* appellate review pursuant to § 1292(a)(1) will have about as significant an effect on our appellate caseload as taking a bucket of water out of the Delaware River today will have on tomorrow's tide at Cape May. The real issue is this court's hospitality or inhospitality to class actions, particularly those asserted on behalf of minorities. The vibrations I feel are decidedly hostile.

This case warrants the court's *in banc* attention. If the Supreme Court is at all interested in the availability of *pendente lite* injunctive relief in civil rights class actions, it warrants that Court's attention as well.

Circuit Judge Adams, too, believes that this case warrants the Court's *in banc* attention.